B. F. MILSTEAD, Respondent, v. THE EQUITABLE MORTGAGE COMPANY, Appellant.

St. Louis Court of Appeals, April 5, 1892.

1.  Practice, Appellate: JUDGMENT FOR RIGHT PARTY. The judgment in this cause is affirmed on the ground that it is for the right party.

2.   **Law and Fact:** INTERPRETATION AND EFFECT OF LETTER. The defendant in this cause transmitted money to a third person in a letter containing directions in regard to the application of the money. *Held,* that the interpretation of the letter was a matter of law for the court; and that the letter showed that the remittance was made to this third person as agent for the defendant, and not as agent for the plaintiff, and was conclusive against the defendant upon that issue.

*Appeal from the Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*E. O. Brown* and *Karnes, Holmes & Krauthoff,* for appellant.

*George Hubbert,* for respondent.

THOMPSON, J.—The substance of the petition in this case is that the defendant agreed to lend to the plaintiff the sum of $1,000 on the security of a mortgage of a farm, owned by the plaintiff in Newton county, Missouri; that, in pursuance of the agreement, the plaintiff and his wife executed a first and also a second mortgage of the said farm to a trustee for the use of the defendant, and executed certain promissory notes which were secured by the mortgage, all of which the plaintiff delivered to the defendant; but that the defendant, in violation of said agreement, refused to pay to the plaintiff the sum of money so loaned to him, except the sum of $200, to the plaintiff's damage in the sum of $2,000, for which he prays judgment, etc. The substance of the answer, so far as it is material to state it, is that there was a preliminary " application or contract " in writing, made and signed by the plaintiff, wherein the plaintiff appointed one Randall as the plaintiff's agent to receive from the defendant the papers and the money loaned by the defendant to the plaintiff under said agreement; and that defendant,

in pursuance of said agreement, paid the sum of $800 in controversy to said Randall as the plaintiff's agent. To this answer the plaintiff filed a reply, the substance of which was that Randall was at all times the agent of the defendant, and not the agent of the plaintiff; and that the clause in the instrument referred to in the answer, which purports to be an "application for a loan," appointing Randall as the plaintiff's agent to receive the money, was imposed upon the plaintiff by the fraud of Randall, acting as defendant's agent, by procuring the plaintiff to sign the application without advising the plaintiff that it contained any such clause of appointment. The case went to trial on two issues: *First*. Whether so much of the application for the loan, as contained the clause appointing Randall as the plaintiff's agent, had been imposed upon the plaintiff by the fraud of Randall acting as the defendant's agent,—that is to say, whether the plaintiff had been induced by Randall, acting as the defendant's agent, to sign the application in question, while concealing from the plaintiff the fact that it contained this particular clause, and under such circumstances as entitled the plaintiff to avoid the effect of this particular clause on the ground of fraud. *Second*. Whether the balance of $800, due from the defendant to the plaintiff under the contract, had been paid by the defendant to Randall as agent for the plaintiff, or to Randall as agent for the defendant. This was the principal and essential issue in the case. The case was tried before a jury, and the plaintiff had a verdict and judgment, and the defendant, appealing to this court, assigns two principal errors: *First*. That the court should have directed the jury to find for the defendant. *Second*. That the court submitted the issue to the jury on erroneous instructions.

We have come to the conclusion, after examining the whole record, that the court might have directed a verdict for the plaintiff on the pleadings and evidence, and consequently that the verdict is for the right party, and the judgment must be affirmed on that ground. The plaintiff put in evidence some seventy-five or eighty exhibits, annexed to depositions of an officer of the defendant, which depositions were taken by the plaintiff. These exhibits, together with other undisputed testimony, showed that, for more than a year prior to the making of the loan in question, Randall had been the agent of the defendant in Newton county for the procuring and arranging of loans for the defendant, and the examining of titles in cases of such loans, under the most minute instructions from the defendant. These instructions were in writing or print and extended into the smallest details. The evidence also showed conclusively that in the character of agent for the defendant Randall negotiated with the plaintiff for the making of this loan to the plaintiff by the defendant, and that, at the end of the negotiation, Randall presented to the plaintiff the formal written application for the loan required by the rules and practice of the defendant. This paper was headed "Application for a loan," and was addressed to the defendant. It was very much like an application for a policy of insurance, containing twenty-nine questions in print, to be answered in writing, and also a considerable statement in fine type of the grounds and conditions on which the plaintiff made application. Then followed, in the same fine type, the following concluding clause: "I have appointed R. M. Randall as my agent to assist me in obtaining this loan, to whom the papers and money may be sent, and with whom the correspondence may be had." Immediately below this was the space reserved for the signature of the applicant, and in that

space the plaintiff signed the application. At the time when the plaintiff signed it, he was a cattle-dealer and was in a bank in Neosho, engaged in making some payments; and the paper was brought in by Randall, and the plaintiff signed it, as he testifies, without reading this concluding clause, and without ever having been apprised by Randall that the paper contained such a clause. And he further testifies that he would not have signed it, if he had known that it contained such a clause, because Randall was insolvent; but he seems, nevertheless, to have had confidence in Randall, and to have trusted Randall down to that time. Randall forwarded this application to the defendant at their office at Kansas City, and they made up an account between them and the plaintiff, in which the plaintiff is charged with $1,000, the agreed amount of the loan, and also with $15, the commission of Randall for effecting the loan. The evidence shows that it was the custom of the defendant, in the case of loans made by Randall, to add the commission of Randall to the amount secured by the deed of trust,—in other words to collect the commission of Randall for him, and to advance it to him. The evidence also shows that Randall acted as the defendant's "examiner" in making this loan, and that in his character of examiner he had made to them the customary report, conveying many points of information, on one of their blanks furnished him for that purpose.

The evidence also showed that, Randall having forwarded the application for this loan to the defendant, and the plaintiff having afterward executed all the papers required by the defendant to be executed, in order to perfect the loan, which papers had been sent by the defendant to Randall, and the plaintiff having delivered those papers to Randall, they were forwarded by Randall to the defendant; whereupon the defendant

remitted to Randall, in a check payable to Randall personally, the sum of $804. This remittance was accompanied by the following letter of instruction from the defendant to Randall:

"KANSAS CITY, Mo., July 6, 1887.
"R. M. Randall, Neosho, Mo.

" DEAR SIR:—We are in receipt of yours, inclosing papers in loan number 7280, Milstead. We herewith inclose you draft for $804, in part payment of this loan. We have retained $200, which we hold, as agreed upon, until the house is built and $500 insurance furnished.

" Out of the money remitted you, you will please procure deed from railroad company, and show filings of the same on the abstract. Return the abstract to us properly completed as soon as possible.

"We much prefer to procure deeds and pay off prior incumbrances ourselves, not because we lack confidence in our correspondents, but because we find it to be the quickest and safest way. In remitting you this money, and asking you to procure deed, we are acting contrary to our usual rule, and in future we wish you would send us statements of amount required where there are mortgages to be released, and, where deeds are to be procured, send us also the contract, when there is one; and, if you will make it a point to have the statements correct and full, you will find that it will expedite the closing of loans greatly.

" We inclose you herewith a waiver of mechanics' liens, which you will please have executed in this loan, and return to us when the house is completed and we will send you the balance due in the loan.

"Yours truly,
"EQUITABLE MORTGAGE CO."

An analysis of this letter will make it appear that the defendant announced to Randall that they inclosed

to him the draft for $804, "in part payment of this loan." If the letter stopped here it would probably make a conclusive case in favor of the defendant. But it does not stop here. It goes on and instructs Randall what to do with the money: "Out of the money remitted to you, you will please procure deed from railroad company and show filings of the same on the abstract. Return the abstract to us properly completed as soon as possible." In explanation of this message it should be stated that the evidence showed without any controversy that there was, at the time of the contract under consideration, an unextinguished mortgage on the property which the plaintiff conveyed to the trustee for the defendant as security for this loan, which mortgage had been made to a railroad company, and was to secure a part of the purchase money of the land which the plaintiff had purchased from the railroad company. This direction to Randall first to use the money transmitted to him in clearing off the existing mortgage could only have been made to him on the conception, that he was acting as the defendant's agent. Then follows a whole paragraph of observations and advice and instructions, which could have no application or relevancy on any other theory than the theory that Randall was acting as agent of the defendant in the transaction: "We much prefer to procure deeds and pay off prior incumbrances ourselves, not because we lack confidence *in our correspondents.*" The letter does not say "not because we lack confidence in the agents appointed by our customers to assist them in negotiating loans with us." The letter goes on to say: "In remitting you this money, and asking you to procure deed, we are acting contrary to our usual rule," etc. Documentary evidence shows that this statement was not true, but that the defendant had transmitted money to Randall in several other cases,

to be used by Randall in closing up loans. Then the letter proceeds with a statement of what the defendant wished Randall to do in future, all of which shows that this letter was merely a letter of instructions by the defendant to its own agent. The evidence also shows that no other letter of advice or instruction was sent to Randall with reference to this remittance. This letter, therefore, embodies the terms and conditions upon which this remittance was made to Randall.

The evidence also shows that Randall kept an account with a bank at Neosho as "agent," and that the account was understood at the bank to be, and was in fact, his account as agent of the defendant. This account had previously been kept by the firm of Randall & Amos, who had originally been appointed as agents of the defendant to procure loans for them in Neosho county, and to act for them in reference to such loans; but when Randall & Amos dissolved partnership which appears to have been a short time before the making of the loan in controversy, the pass-book in which this account had been kept remained in the hands of Randall, and he continued to have his memoranda of his deposits as agent of the defendant made therein. The check of $804, which the defendant thus transmitted to Randall to be used by Randall in closing up this loan, was deposited by Randall with his banker in this agency account. Soon afterwards Randall checked out $500 of this money to close up another loan, which defendant, through Randall, had made to one Carter; and he also checked out the rest, and then absconded, and at the date of the trial his whereabouts were unknown. Why Randall used $500 of this money to pay the loan which the defendant had previously made to Carter does not distinctly appear,—though it is a probable inference, that he had received from the defendant money to use in paying this loan to Carter,

which money he had misappropriated, and that he had made good the deficiency by using $500 of the money placed in his hands for the plaintiff to close up the loan to Carter. The evidence is also distinct to the effect that, before Randall absconded, he did not use the money or any part of it in clearing off the mortgage of the plaintiff to the railroad company, as he was required to do by the letter of instruction of the defendant transmitting the check to him, but that the plaintiff himself cleared off that mortgage after Randall thus absconded.

Our conclusion, upon the whole evidence, is that the question whether the plaintiff did, by a valid appointment, make Randall his own agent to receive this money for the plaintiff, became an immaterial inquiry, in view of the further fact that there was no distinct evidence tending to show *that the defendant ever paid this money to Randall in Randall's character as the plaintiff's agent;* but that the only evidence speaking upon the point, the letter of instructions above set out transmitting the money, shows on its face, that the defendant paid this money to Randall in Randall's character as the defendant's own agent. We conclude also that, as Randall had not, when he absconded, employed any part of the money in clearing off the mortgage held by the railroad company, as the defendant in its instructions had required him to do, when he so absconded he held the money as the agent of the defendant, and not as agent of the plaintiff, and that he embezzled it as money of the defendant and not as money of the plaintiff. It will be the more apparent, when it is considered that it is perfectly obvious on the evidence that the plaintiff could not, at any time prior to the absconding of Randall, have maintained an action against Randall for the recovery of this money, even if the plaintiff had known that Randall had

received it, which the evidence shows he did not. We also conclude that the question of the character in which Randall received the money might have been declared by the court to the jury as a mere question of interpretation, as that character is shown by the letter of the defendants themselves in transmitting the money to Randall, which letter is conclusive as against them. We are further of opinion that the statement of one of the officers of the defendant in his cross-examination, that Randall received this money as the agent of the plaintiff, was the mere statement of the conclusion of the witness, which conclusion it was for the jury to draw upon the evidence, that being the whole issue in the case, or for the court to draw upon the documentary evidence as a question of interpretation. As the ultimate essential fact was in what character the defendants placed the money in the hands of Randall, whether as their own agent or as the plaintiff's agent, and as their letter of transmission shows that they placed it in his hands as their own agent, and under instructions as to what he should do with it, before turning any of it over to the plaintiff, and as it appears that, at the time when he embezzled it, he had not complied with these instructions, it is quite obvious that his embezzlement is a loss which falls upon the defendant and not upon the plaintiff. We, therefore, conclude that the verdict was for the right party, and laying out of the inquiry other matters must affirm the judgment. It is so ordered. All the judges concur.